## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| CHAD BACON, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>LEXISNEXIS RISK SOLUTIONS, INC.<br><br>       Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

On behalf of himself and all others similarly situated, Plaintiff Chad Bacon ("Plaintiff"), by and through his attorneys, respectfully alleges as follows:

## **PRELIMINARY STATEMENT**

1. This is an action for actual, statutory and punitive damages, costs and attorneys' fees brought against Defendant LexisNexis Risk Solutions, Inc. ("LexisNexis" or "Defendant") pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

2. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind,

Congress enacted the FCRA in 1970 to ensure the "confidentiality, accuracy, relevancy, and proper utilization" of credit reports. 15 U.S.C. § 1681(b).

3. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including § 1681e(b), which is one of the cornerstone provisions of the FCRA. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires the consumer reporting agency to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b). This section imposes a high, and often disregarded, standard on consumer reporting agencies. *See, e.g.*, *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that "'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived.'" (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993)).

4. LexisNexis is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. As part of this process, LexisNexis uses a largely automated and systematic procedure to gather and report derogatory public records in credit reports, such as tax liens and judgments. However, LexisNexis

2

does not have adequate procedures to gather updated information about when the tax lien or judgment is released, satisfied, vacated or otherwise removed. LexisNexis's failure to timely gather updated information is a violation of 15 U.S.C. § 1681e(b) because LexisNexis has not implemented reasonable procedures to ensure the maximum possible accuracy in the preparation of the consumer reports that it furnished regarding Plaintiff and the putative class members.

## JURISDICTION

5.  The Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1681p.

6.  The Court has personal jurisdiction over Defendant.

7.  Venue in this Court is proper under LexisNexis because Defendant resides in this district.

## PARTIES

8.  Plaintiff is a natural person and a "consumer" as defined by § 1681a(c) of the FCRA.

9.  Defendant is a corporation headquartered in Alpharetta, Georgia. LexisNexis is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). LexisNexis is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

## FACTUAL ALLEGATIONS

**A.     Defendant's Procedures.**

10.    LexisNexis affirmatively seeks out and purchases public records data, including tax liens and civil judgments, to include this derogatory information in the credit reports it sells.

11.    LexisNexis proactively gathers and disseminates this derogatory information even though there is nothing in the FCRA that affirmatively requires it to do so.

12.    For years, LexisNexis was the exclusive provider of tax lien and civil judgment information that was included on credit reports issued by the "Big 3" credit bureaus, Experian, Equifax, and TransUnion.

13.    The Big 3 hid LexisNexis' involvement in the collection of public records, and until recently did not disclose to consumers that LexisNexis was the entity that collected tax liens and civil judgments.

14.    The public record information provided to the Big 3 by LexisNexis was frequently inaccurate and out-of-date.

15.    In 2015, the Big 3 CRAs entered into a multi-state settlement agreement with over 30 state attorneys general that attempted to alleviate some of the accuracy issues with respect to the reporting of tax liens and civil judgments.

16. In 2017, pursuant to the that settlement, the Big 3 agreed to only report public records if they were updated every 90 days.

17. In 2018 and 2019, the Big 3 went a step further, and agreed to stop completely reporting public records and tax liens as part of three nationwide class actions settlements. *Clark v. Trans Union, LLC,* Case No. 3:15-cv-00391 (E.D. Va.); *Clark v. Experian Info. Sols., Inc.*, No. 3:16-cv-00032 (E.D. Va.); *Thomas et al. v. Equifax Information Services, LLC*, Case No. 3:18-cv-00684-MHL (E.D. Va.)

18. LexisNexis, however, has decided to take advantage of the Big 3's decision to stop selling LexisNexis's data by marketing selling its public record data in its own consumer reports.

19. LexisNexis has an issued a report targeted at lenders and creditors regarding the purported "negative consequences" of not having tax lien and civil judgment information included in credit reports.[1]

20. LexisNexis markets its "RiskView Liens and Judgment Report" as providing the information no longer provided by the Big 3: "After the removal of liens and judgments data from credit reporting agencies, companies found themselves in need of other data sources to support their models. Learn how

---

[1] https://solutions.risk.lexisnexis.com/Liens-Judgments-Impact-Report

LexisNexis® Risk Solutions offers a product that provides liens and judgments so that credit models don't have to be recalibrated or altered."[2]

21. Of course, LexisNexis does not disclose in its marketing materials that the inaccuracies in Defendant's data is one of the reasons why the Big 3 stopped reporting civil judgments and tax liens.

22. LexisNexis uses automated procedures and in some instances vendor to collect information regarding judgments and tax liens that undergo little, if any, meaningful quality control.

23. As a matter of common policy, LexisNexis does not adequately update tax lien or judgment disposition information when a civil judgment or tax lien is satisfied.

24. For example, in litigation against Experian, which obtained its records from LexisNexis, the data analyzed showed an data showed an average delay in obtaining and reporting civil judgment status updates at 77.0146 months, and in South Carolina, lien updates took an average of 243.5 days between the time the disposition update was recorded in the public record and the date that Experian eventually obtained it.

---

[2] https://risk.lexisnexis.com/insights-resources/presentation/navigating-the-new-environment-for-liens-and-judgments

6

25.     LexisNexis fails to update records because some governments delete or expunge records upon satisfaction or no longer provide the data regarding satisfied judgments or liens in its data to LexisNexis.  LexisNexis does not make the minimal effort to ensure that records that are no longer being provided by the government are no longer included in LexisNexis' reports.

26.     Instead, LexisNexis published public records data that it knew would be inaccurate if a release, satisfaction, dismissal, vacatur or appeal had occurred—relying on consumers to clean up their own files via the dispute process after learning of the inaccuracy, rather than paying to have these dispositions collected in an manner that would ensure accuracy.

27.     LexisNexis has known about its inadequate procedures for years through disputes received from consumers, including disputes sent directly to LexisNexis by consumers and disputes received from credit bureaus where a consumer would dispute their public record.

28.     The methods and processes used by LexisNexis to gather releases, satisfactions, vacaturs, and dismissals throughout have been materially the same for the previous five years.

29.     At all times pertinent to this Complaint, LexisNexis' conduct regarding the collection of disposition information was willful and carried out in reckless disregard for consumers' rights as set forth under the FCRA.  By example only, and

7

without limitation, LexisNexis's conduct is willful because it was intentionally accomplished through intended procedures; it had knowledge of its violation through other lawsuits in other jurisdictions but it did nothing to rectify the problem, and as LexisNexis' diligence in collecting and reporting derogatory information is believed by it to be of greater economic value to its paying customers than "disposition" information that demonstrated that the debt was no longer owed.

30. As a result of LexisNexis's conduct, Plaintiff and the putative class members suffered particularized and concrete injuries, including damages to their reputations, reductions to their credit scores, and increased risks that they would be denied credit.

**B.     Plaintiff's Experience.**

31. In January 2013 state tax liens were recorded against Plaintiff in Sullivan County, Tennessee and in Washington County, Tennessee.

32. Plaintiff satisfied these state tax liens in July 2014.

33. On or about January 25, 2016, there was a default judgment entered against Plaintiff in Kingsport, Tennessee. The judgment was entered in error, and quickly vacated and set aside on February 25, 2016. The case was later settled and dismissed with prejudice.

34. LexisNexis, however, has failed to update its records, continues to maintain inaccurate information in Plaintiff's file, and continues to report the tax liens and judgment have not been satisfied or vacated.

35. Defendant has provided Plaintiff's consumer report to numerous potential creditors during the time when inaccurate information has been contained in Plaintiff's consumer file, including in September 2018 to American Express and in February 2019 to AWL, Inc.

36. Plaintiff has attempted many times to correct Defendant's inaccurate reporting.

37. In March 2018, Plaintiff applied for a loan with People's Bank that was eventually denied due to his credit.

38. As a result of his loan denial, in May 2018, Plaintiff had a credit counselor pull his credit report, including information from LexisNexis. The credit report contained inaccurate information regarding the civil judgment.

39. After viewing his report, Plaintiff disputed the inaccurate information with LexisNexis and with the CFPB.

40. In October 2018, Plaintiff had his credit counselor obtain his LexisNexis credit report again. The judgment still appeared on his credit report.

41. In January 2019, Plaintiff contacted LexisNexis by telephone and asked for a copy of his dispute reports. The LexisNexis agent stated she would send the reports by mail in seven days. Plaintiff never received the reports.

42. In February 2019, Plaintiff once again had his credit counselor pull his credit report. The judgment was still reporting.

43. Plaintiff also requested his full credit file from LexisNexis. The credit file showed the inaccurate civil judgment and the two inaccurate tax liens.

44. Thereafter, Plaintiff once again contacted Defendant by telephone and requested the results of LexisNexis's dispute investigation. An agent for LexisNexis once again told Plaintiff that LexisNexis would mail the results of his dispute within the next couple weeks. Plaintiff never received anything from LexisNexis.

45. In January 2020, Plaintiff submitted a written dispute by certified mail, return receipt requested regarding the civil judgment and tax liens. The dispute was delivered and signed for on January 17, 2020 but Plaintiff has not received anything from LexisNexis in response to his dispute.

## CLASS ACTION ALLEGATIONS

46. Plaintiff incorporates by reference all preceding paragraphs as alleged above.

47. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of the following class:

> Nationwide Class:
> All natural persons about whom Defendant reported an unpaid judgment or lien in the two years prior to the filing of this Complaint when in fact the judgment or lien had been satisfied, vacated, or expunged more than 30 days before the date of Defendant's report and Defendant did not report that the judgment or lien had been satisfied, vacated, or expunged .
>
> Tennessee Sub-Class:
> All natural persons about whom Defendant reported an unpaid Tennessee judgment or lien in the two years prior to the filing of this Complaint when in fact the judgment or lien had been satisfied, vacated, or expunged more than 30 days before the date of Defendant's report.

48. Numerosity. The class members are so numerous that joinder of all is impractical. Although the precise number of class members is known only to Defendants there are thousands of recorded tax liens and civil judgments in Tennessee alone.

49. The names and addresses of the class members are identifiable through documents maintained by LexisNexis, and through public entities that maintain civil judgment and tax lien information.

50. Civil judgment and tax lien data can be compared to Defendant's data to ascertain which consumers would meet the definition of the classes above.

51. Existence and Predominance of Common Questions of Law and Fact. Common questions of law and fact exist as to all members of the class, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

a. Whether Defendant adopted procedures that collected and reported updates to liens that were less systematic and effective than those it used to initially collect and report the liens and civil judgments;

b. Whether this conduct constituted a violation of the FCRA; and

c. Whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of Plaintiff and the putative class members.

52. Typicality. Plaintiff's claims are typical of the claims of each class member, which all arise from the same operative facts and are based on the same legal theories. Plaintiff, as every putative class member, alleges a violation of the same FCRA provision, 15 U.S.C. § 1681e(b). This claim challenges the credit reporting procedures of Defendant and does not depend on any individualized facts. Defendant's notice and knowledge of the challenged reporting problem is the same for Plaintiff, as for the putative class.

53. Adequacy. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and has accepted such.

54. Predominance and Superiority. Questions of law and fact common to the class members predominate over questions affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Defendant's conduct described in this Complaint stems from common and uniform practices, resulting in common violations of the FCRA. Members of the classes do not have an interest in pursuing separate actions against LexisNexis, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not likely present any difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

55. This action should be maintained as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not

parties to the adjudications or substantially impair or impede their ability to protect their interests.

## CAUSES OF ACTION

### COUNT I
### 15 U.S.C. § 1681e(b)
### On Behalf of Plaintiff and the Nationwide Class and Tennessee Subclass

56. Plaintiff incorporates by reference all preceding paragraphs as alleged above.

57. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and the putative class members.

58. As a result of Defendant's misconduct, Plaintiff and putative class members suffered damages to their reputations, reductions to credit scores, and increased risk of credit denial.

59. Defendant's violation of 15 U.S.C. § 1681e(b) was willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

60. Plaintiff and the putative class members are entitled to recover actual and/or statutory damages, punitive damages, costs, and attorneys' fees from

Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n, o.

## COUNT II
## 15 U.S.C. § 1681i

61. Plaintiff incorporates by reference all preceding paragraphs as alleged above.

62. Defendant violated 15 U.S.C. § 1681i by failing to perform an adequate and timely reinvestigation of Plaintiff's disputes and by failing to provide him copies their investigation despite multiple request.

63. LexisNexis failed to make the determination that any of Plaintiff's multiple disputes were frivolous or irrelevant pursuant to 15 U.S.C. § 1681i(a)(3).

64. LexisNexis never served the Plaintiff notice that it had made any such determination pursuant to 15 U.S.C. § 1681i(a)(3).

65. As a result of Defendant's misconduct, Plaintiff has suffered damages to his reputations, reductions to credit scores, and increased risk of credit denial along with emotional distress, including frustration, anger, worry, and embarrassment.

66. Defendant's violations of 15 U.S.C. § 1681i were willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

67. Plaintiff is entitled to recover actual and/or statutory damages, punitive damages, costs, and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n, o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the class pray for relief as follows:

A. An order certifying the case as a class action on behalf of the proposed class under Fed. R. Civ. P. 23(b)(3) and appointing Plaintiff and the undersigned counsel of record to represent same;

B. An award of actual, statutory, and punitive damages for Plaintiff and the class;

C. An award of pre-judgment and post-judgment interest as provided by law;

D. An award of attorneys' fees and costs; and,

E. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests and demands a trial by jury.

Date: May 4, 2020　　　　　　　　　　BERGER MONTAGUE PC

/s/E. Michelle Drake
E. Michelle Drake (Bar No. 229202)
John G. Albanese, MN Bar No. 0395882*
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel: 612-594-5999

Fax: 612-584-4470
Email: emdrake@bm.net
jalbanese@bm.net

COLLUM & PERRY
M. Shane Perry*
NC Bar Number: 35498
109 W Statesville Avenue
Mooresville, NC 28115
Tel: 704-663-4187
Fax: 704-663-4178
Email: shane@collumperry.com

*Attorneys for Plaintiff*

*pro hac vice forthcoming*